**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARIEL RONQUILLO, Individually, and on Behalf of All Others Similarly Situated, | Case No. |
| *Plaintiff*, | |
| v. | **JURY TRIAL DEMANDED** |
| DOCTOR'S ASSOCIATES, LLC, and HP INC. | |
| *Defendants*. | |

**CLASS ACTION COMPLAINT**

Plaintiff Mariel Ronquillo, individually and on behalf of all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against Defendants Doctor's Associates, LLC ("DAL") and HP Inc. ("HP"). Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own experiences, and as to all other matters upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE CASE**

1.      This class action alleges violations of the Biometric Information Privacy Act, 740 ILCS 14/1–99 ("BIPA").

2.      Since 2008, BIPA has imposed a notice-and-consent requirement on companies possessing biometric data like fingerprints, voiceprints, and faceprints.

3.      Defendants captured, collected, received, and obtained Plaintiff's biometrics without the appropriate notice and consent. Accordingly, Plaintiff seeks statutory damages as authorized by BIPA.

**PARTIES**

4.      Plaintiff is a citizen of Illinois and a resident of Cook County.

5.      DAL is a Florida limited liability company headquartered in Connecticut. On information and belief: DAL's sole member is Subway US Holdings, LLC, a Delaware limited liability company headquartered in Connecticut; Subway US Holdings, LLC's sole member is Subway System Holdings, LLC, a Delaware limited liability company headquartered in Connecticut; and Subway System Holdings, LLC is a majority-owned subsidiary of Subway Worldwide, Inc., a Delaware corporation headquartered in Connecticut. On information and belief, none of DAL's members are citizens of Illinois.

6.      HP is a Delaware corporation headquartered in California.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action in which both defendants are citizens of states different than Plaintiff and the other class members, and because the amount in controversy exceeds $5,000,000.00

8.      This Court has personal jurisdiction over DAL because DAL is registered to do business in this State, conducts franchise operations in this State, requires franchisees in this state to use SubwayPOS software licensed by DAL, and captures and collects biometrics—including Plaintiff's—from point-of-sale systems it knows to be located in this State.

9.      This Court has personal jurisdiction over HP because HP is registered to do business in this State, leases point-of-sale equipment to Subway franchisees in this State, and knowingly collects and possesses biometrics, including Plaintiff's, in this State.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff resides in Cook County, which is within this District; because Plaintiff had her biometrics unlawfully

collected from within this District; and because this lawsuit arises out of Defendants' conduct within this District.

## COMMON FACTS

11.  DAL is the American franchisor of Subway, the world's largest quick-service restaurant chain.

12.  HP is one of the world's largest vendors of personal computers, printers, and other computing hardware, including restaurant point-of-sale ("POS") equipment.

13.  As part of its franchise operations, DAL requires franchisees to use specific equipment at their Subway locations.

14.  DAL requires franchisees to enroll in the "hardware-as-a-service component of [its] Restaurant Technology as a Service ('RTaaS')" system to obtain a POS system.[1]

15.  The hardware for the POS system comes from HP. Under the RTaaS, Subway franchisees pay monthly fees to lease POS equipment from HP. If the franchisee fails to make the RTaaS lease payments, DAL and its franchisee-owned affiliate, IPC, may repossess the POS system on HP's behalf.

16.  For software, DAL also requires its franchisees to use SubwayPOS, a proprietary point-of-sale software system licensed to franchisees by DAL.

17.  HP's point-of-sale system includes an integrated biometric scanner, allowing restaurant workers to use their fingerprint to perform various actions.

18.  SubwayPOS integrates with HP's biometric scanner (collectively "the Biometric System"). The Biometric System allows Subway Sandwich Artists and other workers to unlock registers and clock in and out of shifts and breaks with their fingerprints.

---

[1] *See* Exhibit 1 at 20.

3

19.     When a worker first uses the Biometric System, DAL uses SubwayPOS to capture the worker's fingerprint and create a reference template, an algorithmic representation of the features of the fingerprint used to subsequently identify that individual.

20.     The reference templates are then stored in a database on the point-of-sale equipment—owned by HP and leased to the franchisees under the RTaaS program—along with information identifying the individual associated with each reference template.

21.     Once a Subway worker uses the Biometric System and a reference template is created, every subsequent use of the Biometric System's fingerprint scanner is compared against the database of reference templates, allowing the Biometric System to identify the individual then using the scanner.

22.     Defendants did not explain the Biometric System to Subway workers.

23.     Defendants did not tell Subway's workers how they used data collected through the Biometric System.

24.     Defendants did not tell Subway's workers how long they kept the data collected through the Biometric System.

25.     Subway's workers did not consent to Defendants' capture, collection, use, or retention of their fingerprints or the identifying data derived from them.

26.     BIPA has been the law of the State of Illinois since 2008.

27.     At the beginning of the class period, June 7, 2016, BIPA had been in effect for eight years.

28.     By the beginning of the class period, BIPA had also been in the news for some time. Facebook had been sued for BIPA violations over a year earlier,[2] and the case had already resulted in headline-generating rulings.[3] Google and Shutterfly had likewise found themselves in the news for alleged BIPA violations.[4]

29.     Throughout the class period, then, BIPA was well known, and its obligations clear.

## PLAINTIFF'S FACTS

30.     Plaintiff worked at a Subway restaurant located at 6449 N. Sheridan Rd., Chicago, Illinois.

31.     The point-of-sale system used by Plaintiff at Subway was owned by HP and utilized SubwayPOS software licensed by DAL.

32.     The point-of-sale system included the Biometric System, which Plaintiff used to clock in and out of shifts and breaks, and to unlock the point-of-sale system.

33.     When Plaintiff first used the Biometric System, DAL used SubwayPOS to capture her fingerprint and create a reference template, an algorithmic representation of the features of the fingerprint used to subsequently identify Plaintiff.

---

[2]     *See* Tony Briscoe, *Suit: Facebook facial recognition technology violates Illinois privacy laws*, Chicago Tribune (Apr. 1, 2015), https://www.chicagotribune.com/news/breaking/ct-facebook-facial-recognition-lawsuit-met-story.html.

[3]     Russell Brandom, *Lawsuit challenging Facebook's facial recognition system moves forward*, The Verge (May 5, 2016), https://www.theverge.com/2016/5/5/11605068/facebook-photo-tagging-lawsuit-biometric-privacy; *see also* Joel Rosenblatt, *Is Facebook's Facial-Scanning Technology Invading Your Privacy Rights*, Bloomberg (Oct. 26, 2016), https://www.bloomberg.com/news/articles/2016-10-26/is-facebook-s-facial-scanning-technology-invading-your-privacy-rights.

[4]     Christopher Zara, *Google Gets Sued Over Face Recognition, Joining Facebook And Shutterfly In Battle Over Biometric Privacy In Illinois*, International Business Times (Mar. 4, 2016), https://www.ibtimes.com/google-gets-sued-over-face-recognition-joining-facebook-shutterfly-battle-over-2330278.

34.     Plaintiff's reference template and identifying information were stored on the point-of-sale equipment owned by HP and leased to Plaintiff's employer under the RTaaS program.

35.     After the reference template was created, every time Plaintiff used the Biometric System, DAL used SubwayPOS to capture her fingerprint and compare it to the stored reference template to identify her.

36.     Neither Defendant explained the Biometric System to Plaintiff.

37.     Neither Defendant informed Plaintiff how they used data collected through the Biometric System.

38.     Neither Defendant told Plaintiff how long they kept the data collected through the Biometric System.

39.     Plaintiff did not consent to Defendants' capture, collection, use, or retention of her fingerprint or the identifying data derived from it.

## CLASS ALLEGATIONS

40.     Plaintiff brings this action on behalf of the following classes of similarly situated individuals:

> **Subway Class:** All individuals whose fingerprint reference template was stored on any Biometric System at a Subway restaurant in Illinois on or after June 7, 2016.
>
> **HP Class:** All individuals whose fingerprint reference template was stored on any HP point-of-sale system in Illinois on or after June 7, 2016.

41.     Excluded from the Classes are any members of the judiciary assigned to preside over this matter, any officer or director of Defendants, counsel for the Parties, and any immediate family member of any of the same.

42.     At times during the class period, Illinois had over 1,000 Subway restaurants. Accordingly, the Classes are likely to contain thousands of individuals. The Classes are therefore

so numerous that joinder of all members is impracticable. The precise number of members of the Classes can be determined by reference to Defendants' records.

43.     Plaintiff's claims are typical of the proposed Classes'. Plaintiff's claims have the same factual and legal bases as those of the members of the proposed Classes, and Defendants' conduct has resulted in identical injuries to Plaintiff and the other members of the Classes.

44.     Common questions of law and fact will predominate over any individualized inquiries. Those common questions include:

      a.    Whether Defendants collected the Classes' biometric identifiers or biometric information;

      b.    Whether Defendants disclosed the Classes' biometric identifiers or information;

      c.    Whether Defendants published a written policy establishing a retention schedule and biometric-destruction guidelines;

      d.    Whether Defendants obtained a written release prior to collecting the Classes' biometrics;

      e.    Whether Defendants informed the Classes, in writing, of the purposes and duration for which their biometrics would be collected and stored;

      f.    Whether Defendants obtained the Classes' consent prior to disclosing their biometrics; and

      g.    Whether Defendants are liable for $5,000 or only $1,000 per violation.

45.      Absent a class action, most members of the Classes would find their claims prohibitively expensive to bring individually, and would be left without an adequate remedy. Class treatment of the common questions is also superior because it conserves the Court's and Parties' resources and promotes efficiency and consistency of adjudication.

46.     Plaintiff will adequately represent the Classes. Plaintiff has retained counsel experienced in biometric class actions. Plaintiff and Plaintiff's counsel are committed to

vigorously litigating this action on the Class's behalf, and have the resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to the Class.

47.     Defendants have acted on grounds generally applicable to Plaintiff and the Class, requiring the Court's imposition of uniform relief, including injunctive and declaratory relief to the Class.

## FIRST CLAIM FOR RELIEF
### Violation of 740 ILCS 14/15
### (On behalf of Plaintiff and the HP Class, Against HP)

48.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49.     As a Delaware corporation, HP is a private entity. 740 ICLS 14/10.

50.     Subway franchisees, including Plaintiff's employer, were required to use HP point-of-sale equipment in their stores.

51.     Subway franchisees, including Plaintiff's employer, were "required to enroll in the hardware-as-a-service component of [Subway's] Restaurant Technology as a Service ('RTaaS') program with HP to obtain a POS system."[5]

52.     Under the RTaaS program, Subway franchisees paid monthly fees to lease POS equipment from HP. HP retained ownership of the POS equipment leased under the RTaaS program.

53.     When Plaintiff and the HP class first used HP point-of-sale systems' integrated fingerprint scanners, the point-of-sale software captured Plaintiff's and the HP Class members' fingerprints and created algorithmic reference templates from those fingerprints, which were used to identify Plaintiff and the HP Class members.

---

[5]     Exhibit 1 at 20.

54.     Once the point-of-sale systems created the reference templates, the reference template were stored on HP's point-of-sale system, where they were used to identify Plaintiff and each of the HP Class members every time they used the integrated fingerprint scanners.

55.     By storing Plaintiff's and the HP Class members' reference templates, HP collected, received through trade, or otherwise obtained Plaintiff's and the HP Class members' biometric information. 740 ILCS 14/10.

56.     Prior to collecting, receiving through trade, or otherwise obtaining Plaintiff's and the HP Class members' biometric information, HP did not inform Plaintiff and the HP Class in writing that their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(1).

57.     Prior to collecting, receiving through trade, or otherwise obtaining Plaintiff's and the HP Class members' biometric information, HP did not inform Plaintiff and the HP Class of the specific purpose for which their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(2).

58.     Prior to collecting, receiving through trade, or otherwise obtaining Plaintiff's and the HP Class members' biometric information, HP did not inform Plaintiff and the HP Class of the length of time that their biometrics would be maintained. 740 ILCS 14/15(b)(2).

59.     Prior to collecting, receiving through trade, or otherwise obtaining Plaintiff's and the HP Class members' biometric identifiers and information, DAL did not obtain a written release authorizing such collection, receipt through trade, or other obtainment. 740 ILCS 14/15(b)(3).

**SECOND CLAIM FOR RELIEF**
**Violation of 740 ILCS 14/15**
**(On behalf of Plaintiff and the Subway Class, Against DAL)**

60.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61.     As a Florida LLC, DAL is a private entity. 740 ICLS 14/10.

62.     DAL required Subway franchisees, including Plaintiff's employer, to use SubwayPOS in their stores.

63.     DAL licensed the SubwayPOS software and exercised exclusive control over its functionality.

64.     When Plaintiff and the Subway Class members first used the Biometric System, DAL used SubwayPOS to capture Plaintiff's and the Subway Class members' fingerprints and to create algorithmic reference templates from those fingerprints, which were used to identify Plaintiff and each of the Subway Class members during their use of the Biometric System.

65.     By scanning Plaintiff's and the Subway Class members' fingerprints through SubwayPOS, DAL captured and collected Plaintiff's and the Subway Class members' biometric identifiers. 740 ILCS 14/10.

66.     By creating a reference template from data points captured from Plaintiff's and the Subway Class members' fingerprints, DAL captured and collected Plaintiff's and the Subway Class members' biometric information. 740 ILCS 14/10.

67.     Prior to capturing and collecting Plaintiff's and the Subway Class members' biometric identifiers and information, DAL did not inform Plaintiff and the Subway Class in writing that their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(1).

68.     Prior to capturing and collecting Plaintiff's and the Subway Class members' biometric identifiers and information, DAL did not inform Plaintiff and the Subway Class of the specific purpose for which their biometrics were being collected, stored, and used. 740 ILCS 14/15(b)(2).

69.     Prior to capturing and collecting Plaintiff's and the Subway Class members' biometric identifiers and information, DAL did not inform Plaintiff and the Subway Class of the length of time that their biometrics would be maintained. 740 ILCS 14/15(b)(2).

70.     Prior to capturing and collecting Plaintiff's and the Subway Class members' biometric identifiers and information, DAL did not obtain a written release authorizing such capture and collection. 740 ILCS 14/15(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter an Order:

a.      Certifying the Classes as defined above, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

b.      Declaring that Defendants' actions as set forth herein violate BIPA;

c.      Awarding injunctive and equitable relief as necessary to protect the Classes;

d.      Finding Defendants' conduct intentional or reckless and awarding $5,000 in damages per violation, per member of the Classes under 740 ILCS 14/20(2), or, if Defendants' conduct does not rise to that standard, $1,000 per violation, per member of the Classes under 740 ILCS 14/20(1);

e.      Awarding Plaintiff and the Classes their reasonable attorneys' fees, costs, and other litigation expenses under 740 ILCS 14/20(3);

f.      Awarding Plaintiff and the Classes pre- and post-judgment interest; and

g.      Awarding such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:September 15, 2021 September 15, 2021                    Respectfully submitted,

/s/   Carl V. Malmstrom                 .
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel:  (312) 391-5059
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiff and the Putative Class*

**HEDIN HALL LLP**
Frank S. Hedin*
Arun G. Ravindran*
1395 Brickell Avenue, Ste 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801
E-mail: fhedin@hedinhall.com
        aravindran@hedinhall.com

**Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff and the Putative Class*

12