IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARIEL RONQUILLO, Individually, and on Behalf of all Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:21-cv-04903 ) |
| vs. | ) ) ) |
| DOCTOR'S ASSOCIATES, LLC, and HP INC. | ) Judge Sara L. Ellis ) ) |
| Defendant. | ) ) |

**DEFENDANT HP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

### I. INTRODUCTION

Plaintiff's proposed class action against HP Inc. (HP) seeks to expand coverage under the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1 *et seq.*, far past the statute's limits and in a manner that would render compliance impossible. BIPA does not and could not feasibly impose its Section 15(b) written notice and written release obligations upon a third-party, device manufacturer like HP. As Plaintiff's own allegations make clear, HP merely provided a device that could not "capture" any purported fingerprint until it was "integrated" with software from a different party *and* only if the unnamed Subway franchise that Plaintiff worked for then deployed this technology. Plaintiff's allegations about HP begin and end with its provision of hardware; the alleged "collection" of biometric data came separately and several steps later. In short, HP did not collect biometrics, and Plaintiff pleads no facts to suggest it did so. HP thus cannot be subjected to liability for allegedly not complying with Section 15(b)'s procedural requirements.

Plaintiff is a former (presumably hourly) employee of a local, but unnamed Subway franchise. Plaintiff alleges that defendant Doctor's Associates, LLC (DAL), as franchisor, required the franchise to use a particular restaurant point-of-sale (POS) system.[1] Plaintiff alleges that DAL licensed the software for this system to franchisees, and that the software "captured" her fingerprint. (Compl. ¶¶ 19, 33, 35.) Plaintiff's sole basis for attributing liability under BIPA to HP is that HP allegedly leased to the franchise the equipment (the "hardware") that purportedly stored so-called reference templates, after this hardware "integrated" with software that HP did not provide and after that software captured the worker's fingerprint. (*Id.*, ¶¶ 18-20.)

Even accepting these allegations as true for purposes of this motion only, they are insufficient to plausibly infer HP's liability because Section 15(b) does not apply to an entity like HP that does not collect biometrics. Nor would it make sense to require HP to disseminate notice and to collect releases from Plaintiff – or as Plaintiff suggests, from every employee who comes and goes from every entity in Illinois that has leased this equipment – when, according to Plaintiff, another entity provided the software to capture her fingerprint, and still another entity (the unnamed Subway franchise that employed her) allegedly utilized it to facilitate this collection. Such an expansive approach to BIPA liability is not warranted by BIPA or the caselaw that interprets it, would render the statute impermissibly overbroad, and should be rejected here.

Indeed, what perhaps is most notable is what is missing from Plaintiff's Complaint and its allegations of Section 15(b) violations: Nowhere does Plaintiff address her franchisee-employer's role in this process. Yet it is inconceivable that any party other than her Subway franchisee employer could have (allegedly) collected her fingerprint or be bound under BIPA to provide notice to or obtain consent from franchisee employees like here. The *only* party in any position to

---

[1] Plaintiff cites to "Exhibit 1" for this allegation, but no exhibit is attached to the Complaint. (Compl. ¶ 14 n. 1.)

facilitate notice and consent is the party using the device to collect the data, but her franchisee-employer is conspicuously missing from this case. And Plaintiff does not even allege that she did not receive BIPA notice from or provide a BIPA release to her franchisee-employer. Instead, in addition to naming DAL, Plaintiff points a finger at a third party like HP that could not feasibly be in a position to comply with Section 15(b)'s dictates – rendering her Section 15(b) claim against HP all the more implausible.

Plaintiff's Complaint against HP is legally deficient for two additional reasons. First, BIPA does not apply extraterritorially, and Plaintiff fails to sufficiently plead HP's Illinois-based conduct that would subject it to BIPA. Second, conclusory assertions aside, Plaintiff also does not plead reckless or intentional conduct and, therefore, does not state a claim against HP for heightened damages under BIPA. The Court should dismiss Plaintiff's Complaint against HP.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff is a former employee of an unnamed, Chicago-based Subway franchise. (Compl. ¶ 30.) Plaintiff contends that defendant DAL, "the American franchisor of Subway," requires Subway franchisees (like the restaurant at which she worked) to use specific equipment. (*Id.*, ¶¶ 11, 13.) This includes requiring they enroll in DAL's "hardware-as-a-service component" of its "Restaurant Technology as a Service ('RTaaS')" system "to obtain a POS system." (*Id.*, ¶14.) The franchisees lease the "hardware" for this POS system from HP. (*Id.*, ¶ 15.) For the "software" used on the POS system, DAL allegedly requires its franchises to use "SubwayPOS," which Plaintiff describes as "a proprietary point-of-sale software system licensed to franchisees by DAL." (*Id.*, ¶ 16; *see also id.*, ¶ 31 ("The point-of-sale system used by Plaintiff at Subway was owned by HP and utilized Subway POS software licensed by DAL.").)

3

According to Plaintiff, HP's device "includes an integrated biometric scanner, allowing restaurant workers to use their fingerprint to perform various actions." (*Id.*, ¶ 17.) Plaintiff expressly acknowledges, however, that the device does this by franchisees using software that is not provided or deployed by HP. Instead, Plaintiff alleges that franchisees use DAL's SubwayPOS software on the device to create what Plaintiff calls "the Biometric System." (*Id.*, ¶ 18.) The Biometric System allegedly allows the franchise employees to use their fingerprints to unlock registers and clock in and out of shifts and breaks. (*Id.*; *see also id.*, ¶ 32.)

Plaintiff's Complaint alleges that when a franchise employee first uses the Biometric System, and even though the Subway franchise has complete control over implementing this system, "DAL uses SubwayPOS to capture the worker's fingerprint and create a reference template," a purported algorithmic representation of the fingerprint used to subsequently identify the individual. (*Id.*, ¶ 19; *see also id.*, ¶ 33 ("When Plaintiff first used the Biometric System, DAL used SubwayPOS to capture [Plaintiff's] fingerprint"); ¶ 53 (describing how "the point-of-sale software" captured Plaintiff and putative class members' fingerprints).) Plaintiff further alleges that after the software captures the fingerprint and creates a reference template, this reference template is "stored" in a database on the POS equipment "along with information identifying the individual associated with each reference template." (*Id.*, ¶ 20.) Thereafter, "every subsequent use of the Biometric System's fingerprint scanner is compared against the database of reference templates, allowing the Biometric System to identify the individual then using the scanner." (*Id.*, ¶ 21.) That is, according to Plaintiff, with each subsequent use of the system, and again even though the unnamed Subway franchise is presumably the only entity that ever handled the device in Illinois, "DAL used SubwayPOS to capture [Plaintiff's] fingerprint and compare it to the stored reference template to identify her." (*Id.*, ¶ 35.)

4

Plaintiff thus does not allege that HP did anything beyond provide hardware, but alleges in conclusory fashion and without any factual support whatsoever, that "[b]y storing" Plaintiff's and putative class members' reference templates, "HP collected, received through trade, or otherwise obtained" their biometric information. (*Id.*, ¶ 55.) Plaintiff thus concludes that HP violated Section 15(b) because before doing so, it did not provide written notice or obtain a written release from Plaintiff and putative class members. (*Id.*, ¶¶ 56-59, *citing* 740 ILCS 15(b)(1)-(3).) Plaintiff doubles down on her effort to expand Section 15(b) beyond recognition by purporting to represent a class of all individuals "whose fingerprint reference template was stored on any HP point-of-sale system in Illinois" since June 7, 2016, regardless of where that individual worked or who was responsible for collecting fingerprints or creating the purported reference template. (*Id.*, ¶ 40.) [2]

## III. ARGUMENT

### A. Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's Complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007)). "That is, the allegations must raise the possibility of relief above the speculative level." *Kerlin v. Chi. Bd. of Elections*, No. 16-cv-7424, 2017 WL 5295680, at *2 (N.D. Ill. Nov. 13, 2017) (citations and quotations omitted). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's Complaint against HP falls short of these standards in numerous respects.

---

[2] Plaintiff filed her complaint on September 15, 2021. (Dk # 1.) Even if the Court were to apply a five-year statute of limitations to her Section 15(b) claims (*see Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, ¶¶ 33, 35), the class period would begin on September 15, 2016, not June 7, 2016.

### B. Plaintiff Fails to State a Claim against HP under BIPA.

Plaintiff's Complaint is legally deficient because, by Plaintiff's own allegations, Section 15's notice and consent obligations do not apply to HP. Plaintiff alleges only that HP supplies the "hardware" which, at most, the Subway franchise used to deploy SubwayPOS software, that HP did not provide, that "captures" her fingerprint and creates a reference template "stored" on the device. Plaintiff's own characterization of this process shows that HP did not itself collect any biometric data and, therefore, did not owe Plaintiff any Section 15(b) notice and consent obligations. The Complaint against HP thus does not plausibly allege that HP violated BIPA and should be dismissed.

BIPA's language itself demonstrates Plaintiff stretches too far in seeking to sweep in HP under Section 15(b). Under Section 15(b), "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" informs the user (or its representative) in writing that biometrics are being collected or stored, identifies the specific purpose and length of time the entity will do so, and receives the user's written release. 740 ILCS 14/15(b)(1)-(3). Section 15(b) imposes this "heightened criteria" on *collectors* of biometrics. *See Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 283 (N.D. Ill. 2019). Collection of biometrics is an *active* undertaking. *See e.g.*, *Jacobs v. Hanwha Techwin Amer., Inc.*, No. 21 C 866, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) ("Following other courts in this district, this court concludes that for Section 15(b)'s requirements to apply, an entity must, at a minimum, *take an active step* to collect, capture, purchase, or otherwise obtain biometric data.") (emphasis added).

Here, Plaintiff alleges that a reference template was stored on the HP device, but fails to plead any facts tying HP to any alleged collection *or* creation of the template. Instead, the

6

Complaint alleges that the SubwayPOS software licensed by DAL to franchisees *collects* any biometric data – through a process over which Plaintiff concedes HP has no control and in which it concedes HP plays no part. *See* Compl. ¶¶ 34-35, 63 ("DAL licensed the SubwayPOS software and exercised exclusive control over its functionality"). If merely *storing* a reference template that is created upon collection – as Plaintiff posits – were sufficient to trigger Section 15(b) obligations, the legislature would not have used terms like "collect" or "capture." *See Emergency Servs. Billing Corp. Inc. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012) ("When interpreting any statute, we begin with the statutory language itself and assume that the plain meaning, if easily ascertained, adequately expresses the intent of the legislature); *Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 6 (2009) ("The best indicator of the legislature's intent is the language in the statute, which must be accorded its plain and ordinary meaning.").[3]

Indeed, multiple courts have analyzed Section 15(b)'s text in evaluating BIPA claims against technology providers like HP and rejected the expansive approach that Plaintiff posits. For example, in *Namuwonge*, the Court refused to find that the defendant-timeclock manufacturer owed Section 15(b) obligations to its customer's employees, recognizing that plaintiff's allegations reveal that "[the employer] collected the fingerprints using a system that Kronos supplied to [the employer] … these allegations do not plausibly allege that Kronos collected, captured, or otherwise obtained [plaintiff]'s biometric information." *Id.*, at 286. Similarly, in *Bernal v. ADP*, 2017-CH-12364, 2019 WL 5028609, at **2-3 (Cir. Ct. Cook County, Aug. 23, 2019) the court concluded

---

[3] This requirement of active collection for Section 15(b) to apply is even further evident when contrasting this provision with Section 15(a), which applies to those entities "in possession" of biometrics. *See* 740 ILCS 14/15(a); *Dana Tank Container, Inc. v. Hum. Rts. Comm'n*, 292 Ill. App. 3d 1022, 1025 (1st Dist. 1997) (where the legislature uses certain words in one instance and different words in another, it intended different results); *Clark v. Chi. Mun. Emp. Credit Union*, 119 F.3d 540, 547 (7th Cir. 1997) ("The use of certain words in one instance by the legislature, and different words in another, indicate that different results were intended.") (citations and quotations omitted).

that Section 15(b) did not apply to a "third party entity" like ADP that provided and serviced a biometric timeclock. Still other courts likewise have refused to stretch Section 15(b) to encompass third-party manufacturers. *See e.g.*, *Jacobs*, 2021 WL 3172967, at \*\*2-3 (dismissing Section 15(b) claim against security camera manufacturer brought by a plaintiff who visited a store where the camera was installed, as "a complete reading of the complaint makes clear that defendant is merely a third-party technology provider (that is, merely provided the cameras), and that the active collector and processor of the data is T.J. Maxx."); *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876-77 (N.D. Ill. 2020) (dismissing Section 15(b) claim against biometric facial recognition software provider brought by a plaintiff who used its mobile application).

While some courts have determined that Section 15(b) is broad enough to make notice and consent obligations applicable to device manufacturers, in each of those cases there were fact-intensive allegations about these entities capturing biometrics that are absent here.[4] For the reasons discussed, a more faithful interpretation of Section 15(b)'s text (including relative to other BIPA provisions that do not use the same terms) is that some "active step" is required to implicate Section 15(b). *See Jacobs*, 2021 WL 3172967 at \*2 ("Plaintiff does not explain how an entity could 'otherwise obtain' biometric information without taking any active steps to do so.").[5] In addition,

---

[4] *See Flores v. Motorola Sols., Inc.*, No. 1:20-cv-01128, 2021 WL 232627, at \*\*1 (N.D. Ill. Jan. 8, 2021) (slip copy) (defendants "allegedly extract and store class members' facial biometric information" from photographs); *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 779-80 (N.D. Ill. 2020) ("The complaint alleges that when Plaintiffs enrolled in and used their employers' timekeeping systems, Kronos obtained their biometric data[.]" ); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1090 (N.D. Ill. 2019) (alleging defendant's "cloud-based point of sale" systems "collected and stored [plaintiff]'s biometric identifier into its database"); *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1297-98 (W.D. Wash. 2021) (finding that Section 15(b) applied when Microsoft applied for and downloaded a data set from IBM for facial recognition purposes); *King v. PeopleNet Corp.*, No. 21 CV 2774, 2021 WL 5006692, at \*\*2, 8 (N.D. Ill. Oct. 28, 2021) (defendant's face scanner device expressly alleged to collect biometric data and transmit it to defendant's cloud-based system on defendant's servers).

[5] Notably, even the term "obtain" in Section 15(b) is defined with an active connotation as "to *bring* into one's own possession; to procure, *esp. through effort*[.]" Black's Law Dictionary (11th ed. 2019) (emphases added).

8

there is no case law recognizing Section 15(b) obligations in the context here, where Plaintiff pleads that *another entity* supplied, and required the use of, the software that captured biometrics through a device deployed by *yet another entity* (Plaintiff's franchisee-employer). *See* Compl. ¶ 50.

Moreover, subjecting HP to liability would do nothing to further BIPA's purpose. As the Illinois Supreme Court explained in *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, at ¶ 34, BIPA "vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent." Requiring HP to be the *third* party to provide a specific Illinois employee or consumer written notice and receive written consent does not afford that individual any greater control of their biometric information.

To the contrary, Plaintiff's approach would create absurd results. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *People v. Hanna*, 207 Ill. 2d 486, 497-500 (2003). Under Plaintiff's theory (and assuming for now the technology at issue implicates "biometric identifiers" or "biometric information" covered by BIPA (*see* 740 ILCS 14/10)), HP would need to ensure somehow that it is informed by every entity that uses its hardware anywhere in Illinois whenever *that* entity hires a new hourly employee. HP then would be required to dispatch a notice to such individuals – potentially thousands every year – who work for completely independent entities *and* ensure it collects all such individuals' written releases. This process must be completed *before* that individual's employer allows him or her to use this device. And this would need to take place *even though each individual employer shoulders notice and consent obligations* (creating a

9

potential irreconcilable conflict as well if an employer receives a BIPA consent but not the franchisor or manufacturer).[6]

Thus, especially here, "to read BIPA as requiring that a third party provider of the biometric timeclock technology, without any direct relationship with its customers' employees, obtain written releases from said employees would be unquestionably not only inconvenient but arguably absurd." *Bernal*, 2019 WL 5028609 at *1. In fact, if anything, applying Section 15(b) notice and consent obligations to HP in this context would frustrate the statute, which recognizes that "the use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings" (740 ILCS 14/5(a)), by leading companies potentially to retreat from doing business in Illinois amidst such legal risk and uncertainty.

In short, Plaintiff's own allegations make clear that HP does not – and should not – have any BIPA, Section 15(b) obligations applicable to Plaintiff, or to any of the putative class members throughout Illinois whom she seeks to represent. The Court therefore should dismiss Plaintiff's claims against HP pursuant to Rule 12(b)(6).

    **C. Plaintiff's Complaint against HP Fails Because BIPA Does Not Apply Extraterritorially to HP's Alleged Conduct.**

Plaintiff's Complaint against HP fails for the additional reason that it does not sufficiently plead how HP, a non-Illinois entity that is not alleged to have done anything at all in Illinois violative of BIPA, could be liable under this statute. Under Illinois law, "a statute is without

---

[6] On top of these insurmountable practical problems of applying BIPA notice and consent requirements to HP under these circumstances, given its lack of access to information about or any connection to franchise employees, one also has to consider the larger implications of widening the BIPA net so far. Indeed, applying BIPA notice and consent obligations to HP in this context would require it (and all manufacturers of devices capable of being used with third-party software or otherwise to collect biometric data) to determine the exact use each purchaser of its hardware will make; if, when, and how the purchaser will collect any biometric data; and any changes to the purchaser's use of the hardware over time.

extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005). BIPA does not contain an express provision stating that it is intended to apply extraterritorially. *See Marsh v. CSL Plasma, Inc.*, 503 F. Supp. 3d 677, 686 (N.D. Ill. 2020); *McGoveran v. Amazon Web Servs., Inc.*, No. 20-1399-LPS, 2021 WL 4502089 at *3 (D. Del. Sept. 30, 2021). Thus, for any conduct to be actionable under BIPA, it must have "occur[ed] primarily and substantially in Illinois." *Id.* (citing *Avery*, 216 Ill. 2d at 187).

But as Plaintiff acknowledges, HP is a Delaware corporation headquartered in California. (Compl. ¶ 6.) Plaintiff's allegations regarding Illinois-based activities by HP are limited to conclusory assertions about how HP-provided devices purportedly store information, which is legally deficient for the reasons discussed, including Plaintiff's concession that HP was not the entity responsible for capturing fingerprints from the Illinois-based Plaintiff and, according to Plaintiff, from the proposed Illinois-based class. *Infra*, § III, B. Merely parroting BIPA's statutory language is insufficient to sustain a claim. *See Kloss*, 462 F. Supp.3d at 876-77; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims they are pleading . . . rather than providing some specific facts to ground those legal claims, that they must do more.") Plaintiff offers nothing else. The Court therefore should dismiss Plaintiff's Complaint against HP on extraterritoriality principles as well.

### D. **Plaintiff Fails to Sufficiently Plead Reckless or Intentional Conduct under BIPA.**

Lastly, Plaintiff fails to sufficiently plead that HP acted recklessly or intentionally, so as to state a claim for heightened damages under BIPA. *See* 740 ILCS 14/20(2). Plaintiff's Complaint alleges that HP violates BIPA, but recklessness and intentionality cannot be inferred from violating

11

the statute alone since that would render BIPA's separate requirement of proving such conduct to recover damages superfluous. *See People v. Trainor*, 196 Ill.2d 318, 332 (2001) ("[The] words [of the statute] cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous."); *Beeler v. Saul*, 977 F.3d 577, 591 (7th Cir. 2020) ("A statute and its implementing regulations should be read as a whole and, where possible, afforded a harmonious interpretation.") (citations and quotations omitted).

Plaintiff fails to plead any conduct by HP from which a court could infer that any purported BIPA violations were reckless or intentional so as to warrant heightened damages. Although "[s]tates of mind may be pleaded generally, [ ] a plaintiff still must point to details sufficient to render a claim plausible." *See Namuwonge*, 418 F. Supp. 3d at 286 (citing *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and quotations omitted).

Besides baldly asserting that she is entitled to damages for reckless or intentional conduct in her Prayer for Relief, Plaintiff merely points to the fact that BIPA was enacted in 2008 and that there was BIPA litigation before this case. *See* Compl. ¶¶ 27-29; *id.*, p. 11.d. But Plaintiff's "abstract statements regarding damages are insufficient for the court to infer that [HP] acted recklessly or intentionally." *See Namuwonge*, 418 F. Supp. 3d at 286 (rejecting BIPA claim based on reckless or intentional conduct); *see also Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019) ("[Plaintiff]'s conclusory statement of [defendant]'s intent is insufficient to allow us to infer that [defendant] acted intentionally or recklessly and does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed

to meet the strictures of Section 15."). And the *Namuwonge* court notably did not consider alleged failure to adhere to BIPA despite being enacted years earlier sufficient to sustain claims of reckless or intentional conduct. 418 F. Supp.3d at 286. That of course makes sense, because if noncompliance with a law on the books – which is all Plaintiff alleges – were sufficient to recover under BIPA, the legislature would not have imposed the additional requirement of proving negligent, reckless, or intentional conduct. Plaintiff therefore also fails to plead that HP is liable for damages to Plaintiff available under BIPA, Section 20(2).

### IV. CONCLUSION

For the foregoing reasons, Defendant HP Inc. respectfully requests that this Court dismiss all claims in Plaintiff's Complaint against it, with prejudice.

Dated: November 8, 2021

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Gregory P. Abrams*
Gregory P. Abrams
Joan A. Akalaonu
Taylor L. Haran
311 S. Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: 312.212.6500
Facsimile: 312.212.6501
Gregory.abrams@faegredrinker.com
Joan.akalaonu@faegredrinker.com
Taylor.haran@faegredrinker.com

Attorneys for Defendant HP Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2021, I electronically filed the foregoing **DEFENDANT HP INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** herein with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants.


　　　　　　　　　　　　　　　　　　　　　　/s/ Taylor L. Haran