IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARIEL RONQUILLO, Individually, and on Behalf of all Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:21-cv-04903 ) |
| vs. | ) ) ) |
| DOCTOR'S ASSOCIATES, LLC, and HP INC. | ) Judge Sara L. Ellis ) ) |
| Defendant. | ) ) ) |

**DEFENDANT HP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Plaintiff's Consolidated Opposition, like her Complaint, confirms she has no claim under Section 15(b) of the Illinois Biometric Information Privacy Act, 740 ILCS § 14(b) (BIPA), against HP Inc. (HP). Despite Plaintiff's efforts to recast her conclusory allegations as "jugular" (Opp., p. 3), and to bulk up her allegations by lumping together defendants Doctor's Associates, LLC ("DAL") and HP, she fails to plead or even point to a single fact that shows HP did *anything* to collect biometrics so as to give rise to Section 15(b) violations. And it did not. Indeed, the sum of Plaintiff's factual allegations about HP is that HP allegedly leased hardware to a Subway franchise. (Compl. ¶ 15.) According to Plaintiff, that hardware was then "integrated" by *someone other than HP* with software provided by *someone other than HP* to capture Plaintiff's fingerprint, and the device allegedly stored a so-called reference template. (*Id.*, ¶¶ 19, 33, 35.) While Plaintiff claims HP "stored" the reference template after-the-fact, she pleads no *facts* to connect HP to the claimed

storage, and even taking this allegation as fact, alleged "storage" of information after collection is insufficient to trigger Section 15(b)'s procedural requirements.

Nor can Plaintiff overcome the deficiencies of her Complaint by baldly labeling HP a "non-employer collector[s] of employees' biometric information," mischaracterizing HP's position as a blanket claim of BIPA "immunity" for non-employers, or asserting HP is seeking to "write into the statute" a heightened "collection" requirement under Section 15(b). (Opp., pp. 1, 5.) HP does not contend non-employers who collect biometric data are automatically immune from BIPA liability. It does not argue that there should be any heightened "collection" requirement. Instead, HP only asks the Court to enforce the statute as written – that Section 15(b) requires collection, not merely leasing a device that *another* entity can use to load software that *may* be used to collect data. Conspicuously absent from Plaintiff's Complaint is any allegation about whether Plaintiff's own employer, the Subway franchise – the entity with the only access to Plaintiff, the entity alleged to have facilitated collecting Plaintiff's fingerprints, and the only entity with any practical ability to seek or obtain consent to do so from Plaintiff – did, in fact, obtain her consent. As the Complaint makes clear and the Opposition underscores, HP simply was not a participant in *any* part of the alleged process that led to *any* collection of biometrics.

Moreover, contrary to Plaintiff's contentions, *no* court has recognized a BIPA cause of action against an entity as removed from the purported biometric collection process as HP is here. To do so would render the statute so overbroad as to render both compliance and enforcement impossible. The Court should reject the unprecedented approach Plaintiff advances that would stretch BIPA beyond reason.

Plaintiff's arguments against other grounds for dismissal are equally without merit. Plaintiff cannot meet Section 20(2)'s heightened damages requirements by simply regurgitating

2

BIPA's statutory language and proclaiming that HP's alleged (but non-existent) noncompliance was "reckless" or "intentional," without pleading any facts to give rise to any plausible inference that HP engaged in conduct that would warrant such damages. Lastly, because Plaintiff's allegations of collection are deficient, there can be no claim that HP engaged in conduct in Illinois that would subject it to liability under BIPA, providing another reason to dismiss HP.

II. **ARGUMENT**

A. **Plaintiff Fails to State a Claim against HP under BIPA, Section 15(b).**

1. **Plaintiff Fails to Plead that HP Collected Biometrics.**

Although Plaintiff tries to reframe her allegations, the Complaint does not plead facts to sustain a Section 15(b) claim against HP. As set forth more fully in HP's opening brief (*see* HP's Mem., pp. 3-5), Plaintiff alleges only that HP leases point-of-sale equipment to Subway franchisees in Illinois, including to the unnamed Subway enterprise where Plaintiff worked. (Compl. ¶¶ 9, 31.) This is what Plaintiff describes as the "hardware" for the point-of-sale (POS) system. (*Id.*, ¶ 15.) This system "includes an integrated biometric scanner, allowing restaurant workers to use their fingerprint to perform various functions." (*Id.*, ¶ 17.) But Plaintiff does not (and could not) allege that the hardware component can or does capture biometrics.

Rather, according to Plaintiff, the "Subway POS software," a proprietary POS system that DAL licenses and allegedly requires its franchisees to use, "captures and collects biometrics." (*Id.*, ¶¶ 8, 13, 14, 31.) According to Plaintiff, only after the "SubwayPOS" integrates with the hardware is a "Biometric System" created, which is used "to capture the worker's fingerprint and create a reference template." (*Id.*, ¶¶ 18, 19.)[1] These reference templates, in turn, are "stored" on the

---

[1] *See also* Compl., ¶ 33 ("When Plaintiff first used the Biometric System, DAL used SubwayPOS to capture her fingerprint and create a reference template, an algorithmic representation of the features of the fingerprint used to subsequently identify Plaintiff.")

3

hardware. (*Id.*, ¶¶ 20, 34.) After then, every time Plaintiff used this device, "the "Subway POS" is "used . . . to capture her fingerprint and compare it to the stored reference template to identify her." (*Id.*, ¶ 35.) As Plaintiff concedes, HP is not engaged in any part of the alleged collection or capture of fingerprints that could implicate Section 15(b).

Indeed, the Opposition's restatement of the Complaint's "First Claim for Relief" raised against HP (Opp., pp. 8-9) underscores this point. The Complaint there states that "When Plaintiff and the HP class first used HP point-of-sale systems' integrated fingerprint scanners, the point-of-sale software" captured her fingerprints, and that the reference templates created during this process were stored on the device. (Compl. ¶¶ 53-54.) It is only from this alleged "storing" of reference templates – *after* collection – that Plaintiff makes the unwarranted, inferential and non-factual leap to asserting Section 15(b) violations against HP. (*Id.*, ¶ 54.) *See Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (plaintiff must plead sufficient factual allegations that "allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged.") (emphasis added).

At most then, Plaintiff seeks to draw in HP by alleging in a conclusory fashion that HP, after-the-fact, "stored" biometric data on the hardware – an act that, even if true, is insufficient to constitute capture or collection of biometrics under Section 15(b). (*See* HP's Mem., pp. 6-8; *infra*, p. 5.) Yet Plaintiff pleads no *facts* to connect HP to any such storage. The Complaint provides no basis to infer that once the device left HP's hands, HP exercised any control over it, or over any data that her employer thereafter placed there. And nowhere in her Opposition does Plaintiff dispute that her *employer* – not anyone else – controlled this entire process.

Stuck with these allegations, Plaintiff pivots in her Opposition to misstating HP's position as contending that BIPA requires "'active' collection" of biometrics. (Opp., p. 4.) But HP does

4

not contend Section 15(b) applies only to "active collection," which is a redundancy because, again, the term "collect" *itself* connotes an active undertaking or an active step – beyond solely possessing or having biometrics (or in this case, simply supplying Plaintiff's employer a device capable of being integrated with software that may be used by the employer to collect data). (*See* HP's Mem., p. 6, and cases cited therein; *see also Heard v. Becton, Dickinson & Co.*, 524 F. Supp.3d 831, 841 (N.D. Ill. 2021) (plaintiff must allege "an active step" to collect, capture, or otherwise obtain biometric data under Section 15(b), and explaining defendant's "active role" in this regard).) Were it otherwise, the legislature would not have used terms like "collect," "capture," or "obtain" when addressing BIPA-covered entities' obligations to provide advanced notice and obtain prior consent. *See* 740 ILCS 14/15(b); *compare* 740 ILCS 14/15(a) (addressing different requirements for those entities "in possession" of biometrics); *see also* HP's Mem., pp. 6-7.

As Plaintiff recognizes, Section 15(b) notice and consent obligations accrue only to a non-exempted "collector of biometric information." (Opp., p. 5.) Aside from conclusory assertions this Court need not consider (*see Iqbal*, 556 U.S. at 681), the Complaint is bereft of any *facts* suggesting that HP did *any* collection of (or captured or obtained) biometrics that would implicate Section 15(b). Because Plaintiff instead – and with no factual support – pleads only that HP somehow "stored" on the device a reference template *that had already been created upon the alleged fingerprint collection, allegedly undertaken by another entity*, Plaintiff fails to state a Section 15(b) claim against HP. *Id.*, pp. 6-7.

5

## 2. The Decisions Rejecting Motions to Dismiss BIPA Claims That Plaintiff Cites Are Inapposite.

The decisions denying motions to dismiss BIPA claims against non-employer defendants that Plaintiff cites are readily distinguishable and do not support extending Section 15(b) liability to HP. (Opp. pp. 5-7, 9-10.)

In those cases involving so-called biometric timeclocks or other devices used for timekeeping, the courts addressed factual allegations that (a) the manufacturers themselves solely collected biometrics, not that they only provided hardware while software supplied by another entity performed the collection, and (b) the defendants' involvement was not limited to allegedly storing information. *See Figueroa v. Kronos Inc.*, 454 F. Supp.3d 772, 783 (N.D. Ill. 2020) (plaintiffs alleged Kronos "obtained their biometric data" and also alleging that Kronos disseminated biometrics to other firms); *King v. PeopleNet Corp.*, No. 21 CV 2774, 2021 WL 5006692 at *1-2 (N.D. Ill. Oct. 28, 2021) (plaintiff alleged that PeopleNet, which "marketed its devices and software as superior to traditional time clocks," collected biometrics, converted them into an electronic format, and transmitted biometric data to its time and attendance systems hosted on its servers);[2] *Neals v. PAR Technology Corp.*, 419 F. Supp. 3d 1088, 1090 (N.D. Ill. 2019) (defendant alleged to have developed "cloud-based" point-of-sale systems that collected biometrics into its database).[3]

---

[2] Notably, the court in *King* "agree[d]" that Section 15(b) requires "something more than possession." *King*, 2021 WL 5006692, at * 8, n. 11. But, unlike here, "the complaint alleges that defendant did more than possess [plaintiff]'s biometric information: it says that PeopleNet collected and obtained it." *Id.*, at *8.

[3] Plaintiff also cites to *Duron v. Unifocus (Texas) LLC*, No. 18-cv-06749 (N.D. Ill. Sept. 27, 2021) (Opp., p. 6), in which the court denied a motion to dismiss without a written decision. Here too, the plaintiff alleged more than mere storage and did not limit the sole defendant's role to that of only supplying hardware. (*See* Dkt. # 59.)

6

Other cases involve technology farther afield. But these decisions share the same common denominator of plaintiffs pleading the named defendants were alleged to have directly harvested biometrics, rather than storing biometric data upon another entity's collection.

Thus, in *Flores v. Motorola Sols., Inc.*, No. 1:20-cv-01128, 2021 WL 232627 at *3 (N.D. Ill. Jan. 8, 2021), defendants allegedly developed a database of images by "extracting" facial biometrics from photographs, which defendants disclosed to other parties for profit. Similarly, in *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1291 (W.D. Wash. 2021), defendant-Microsoft allegedly downloaded a dataset of millions of images containing facial geometry. *See also Pruitt v. Par-a-Dice Hotel Casino*, No. 1:20-cv-1084-JES-JEH, 2020 WL 5118035 at *2 (C.D. Ill. Aug. 31, 2020) (alleging defendants-casino that plaintiffs visited used "facial recognition devices and associated software" to scan individuals' facial geometry; no claims against manufacturer of devices); *Heard*, 524 F. Supp.3d at 836 (N.D. Ill. 2021) (automated medication dispensing devices alleged to capture a fingerprint image and extract unique features in the fingerprint to create a user template). In short, there is no "raft of federal authority" (Opp., p. 1) that would suggest anything other than dismissal of HP is appropriate.

### 3. Attributing BIPA Section 15(b) Obligations to HP Would Engender Absurd Results.

Dismissal of HP is consistent with BIPA's legislative purpose and avoids interpreting the statute in a way that would lead to absurd results. (*See* HP's Mem., p. 9, citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretation of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").) Neither Plaintiff nor those throughout Illinois she seeks to represent need receive a redundant notice from HP containing the same information as the notice an employer presumably

7

should have provided, before deciding whether to use a biometric timeclock or to instead "say no by withholding consent." *See Rosenbach v. Six Flags Ent't Corp.*, 2019 IL 123186, at ¶ 34.

Plaintiff's response that BIPA's notice and consent requirements are "straightforward" (Opp., p. 10) disregards (a) that it cannot be genuinely disputed that her employer is best positioned to provide any notice and receive consent, and (b) the extraordinary and unreasonable practical burden that compliance would entail for HP. *See e.g.*, *Bernal v. ADP*, 2017-CH-12364, 2019 WL 5028609, at **2-3 (Cir. Ct. Cook County, Aug. 23, 2019) ("arguably absurd" for timeclock technology provider to follow BIPA procedures vis-à-vis its customers' employees). For HP to comply with Section 15(b) in the manner that Plaintiff suggests (while again affording no additional benefit to the employees whose fingerprints allegedly are being captured) would entail at least the following: HP would need to be cognizant of all software installed on its devices anywhere they are used in Illinois; connect with every employer that uses its hardware and send those employer's employees, for whom HP would not have any records, a written notice; collect from these employees all over Illinois their written consents; and develop a process to somehow ensure that the Illinois employers do not allow their employees to clock in until *after* HP *receives* the written release in California. *See* 740 ILCS § 14/15(b)(3). For all new hires then, the employer would have to wait out the completion of this notice and consent process for HP, imposing delay and exposing HP to liability if employers start their employees on the clock prematurely. This process would repeat whenever any Illinois employer using these devices (assuming, to be clear, they are integrated with purported biometrics-capturing software, which HP would have to monitor) onboards a new hourly employee.

The Court need not and should not indulge this effort to impose liability upon HP and thereby expand Section 15(b) beyond any reasonable limit.

8

### B. The Court Should Strike Plaintiff's Request for Heightened Damages under BIPA, Section 20(2).

Plaintiffs that prove liability under BIPA are not automatically entitled to damages. Rather, a "prevailing party *may* recover" monetary damages if the plaintiff proves the BIPA violations were negligent or, to recover heightened damages, if they were intentional or reckless. 740 ILCS § 14/20(1), (2) (emphasis added); *Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279 at ¶ 66, n. 4 (noting BIPA's use of the term "may recover" damages and observing that damages under BIPA "are discretionary, not mandatory"). At this stage, to plead she is entitled to heightened damages under BIPA, Plaintiff must plead facts that lead to a plausible inference HP engaged in intentional or reckless conduct. Plaintiff's assertion (or that of another court) to the contrary (Opp., pp. 11-12), ignores that recovery of damages requires more than only pleading liability.

Plaintiff's pleadings on this point are deficient. Plaintiff contends that she has "clearly" alleged reckless and intentional conduct because she pleads that "each Defendant independently captured, collected, and /or [sic] otherwise obtained Plaintiff and the respective class members [sic] immutable biometric identifiers, and that individuals' biometric information was used in violation of the statute every time an individual sought to clock in or out of work or use a cash register[.]" (*Id.*, p. 12.) Aside from the fact that, again, Plaintiff fails to plead facts to support this conclusory assertion as to HP, this merely regurgitates statutory language and conflates the elements of BIPA liability with the *separate* requirements to recover damages, which is insufficient to meet her pleading burden. *See e.g.*, *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp 3d 612, 619 (N.D. Ill. 2019); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019); HP's Mem., pp. 11-13.

Moreover, as discussed (*see* HP's Mem., pp. 12-13), the alleged failure to comply with BIPA despite it being enacted in 2008 and the existence of litigation under BIPA (Opp., p. 12) is another way of asserting that HP should have, but did not, comply with the law. That does not reflect factual allegations suggesting HP's conduct or state of mind that, if proven, would *additionally* entitle Plaintiff to damages. (*See* HP's Mem., pp. 12-13.) The Court therefore should strike Plaintiff's request for $5,000 in damages for statutory violations under BIPA, Section 20(2).

### C. BIPA Does Not Apply Extraterritorially to HP's Alleged Conduct.

Plaintiff does not dispute that there is no express provision in BIPA stating that it is intended to apply extraterritorially, and that therefore she must plead that HP's alleged conduct occurred "primarily and substantially in Illinois." *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005); *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 65 (1st Dist. 2008) (affirming dismissal of complaint based on extraterritoriality argument where most circumstances relating to plaintiff's claims took place outside of Illinois); HP's Mem., pp. 10-11. Otherwise, to draw the California-based HP into this matter would work an impermissible extension of BIPA.

Yet to meet this standard, Plaintiff once again only proffers conclusory assertions that HP "collected, captured, or otherwise obtained" her fingerprints in Illinois and that therefore HP failed to provide the requisite disclosures and obtain written consent from Plaintiff in Illinois. (Opp., p. 14.) These allegations are deficient for the reasons explained above, i.e., Plaintiff fails to plead that HP engaged in any conduct that would implicate Section 15(b), and thus no alleged violation took place in Illinois under extraterritoriality principles. *See McGoveran v. Amazon Web Servs., Inc.*, No. 20-1399-LPS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021) (dismissing plaintiff's BIPA complaint on extraterritoriality grounds). Thus, the Court may dismiss HP for this reason as well.

10

**III. <u>CONCLUSION</u>**

For the foregoing reasons, and those stated in its opening Motion to Dismiss Plaintiff's Class Action Complaint and supporting Memorandum of Law, Defendant HP Inc. respectfully requests that this Court dismiss all claims in Plaintiff's Complaint against it, with prejudice.

Dated: January 14, 2022

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: */s/ Gregory P. Abrams*
Gregory P. Abrams
Joan A. Akalaonu
Taylor L. Haran
311 S. Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: 312.212.6500
Facsimile: 312.212.6501
Gregory.abrams@faegredrinker.com
Joan.akalaonu@faegredrinker.com
Taylor.haran@faegredrinker.com

Attorneys for Defendant HP Inc.

## CERTIFICATE OF SERVICE

  I hereby certify that on January 14, 2022, I electronically filed the foregoing **DEFENDANT HP INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** herein with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants.

                   */s/ Taylor L. Haran*